**WELLS et al. v. MARGRAVES et al.**

(Court of Civil Appeals of Texas. Texarkana. Jan. 28, 1914. On Appellees' Motion for Rehearing, Feb. 12, 1914.)

1. EXECUTORS AND ADMINISTRATORS (§ 438*)—ACTIONS—PARTIES.

Where the entire estate had been converted into money as directed by the will, which was an "independent will," and the determination of the amount to which each legatee was entitled was a mere matter of calculation, it was not necessary that all persons entitled to parts of the fund be made parties to an action for a legatee's interest; Sayles' Ann. Civ. St. 1897, art. 2154, requiring an application for partition and distribution to state the names and residences of all persons entitled to a share of the estate, if known, and whether they are adults or minors, not applying to an estate administered independent of the probate court.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1765–1785, 1790; Dec. Dig. § 438.*]

2. DEATH (§ 2*)—PRESUMPTIONS—TIME.

In view of Rev. St. 1911, art. 5707, providing that any person absenting himself for seven years successively shall be presumed to be dead, a showing in an action for distribution that a legatee left home with a circus when between 17 and 21 years of age, and had never been heard of by his relatives for 58 years, warranted a finding that he was dead at the expiration of the 7 years following his leaving home.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 1–3; Dec. Dig. § 2.*]

3. EVIDENCE (§ 67*)—PRESUMPTIONS—MARRIAGE.

Under the rule that the continued existence of a status is presumed, it will be presumed that one who was unmarried when he left home when between 17 and 21 years of age, and who was not afterwards heard of, remained unmarried until he died.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 87, 88, 103; Dec. Dig. § 67.*]

4. DEATH (§ 4*)—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an action to recover an interest claimed under a will, evidence *held* to sustain a finding that one of the legatees was dead.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 5, 6; Dec. Dig. § 4.*]

5. EVIDENCE (§ 314*)—HEARSAY.

Evidence as to result of inquiries made by witness in the counties where a certain person once lived and was last heard of, with reference to whether he was dead, etc., was inadmissible as hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1274–1297; Dec. Dig. § 314.*]

6. DEATH (§ 4*)—PRESUMPTIONS.

Under the rule that one may be presumed to be dead if confronted by some specific peril when last heard of, it will be presumed that one is dead who, when last heard of, was shot and carried to a hospital.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 5, 6; Dec. Dig. § 4.*]

7. EXECUTORS AND ADMINISTRATORS (§ 450*)—ACTIONS—BURDEN OF PROOF.

In an action for a legatee's interest under a will, which gave the proceeds of the estate to certain persons and their children, and, if any of them died without issue, gave their interest to the living legatees, the burden was on plaintiff to prove a deceased legatee died without children.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1858–1876; Dec. Dig. § 450.*]

8. EVIDENCE (§ 314*)—HEARSAY.

Evidence, in an action to recover a legatee's interest in an estate, that a certain person who was not a witness had written letters inquiring about an alleged deceased legatee, and found no one who remembered that such legatee had ever lived in the place to which the letters were addressed, was incompetent.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1274–1297; Dec. Dig. § 314.*]

9. DEATH (§ 4*)—DEATH OF LEGATEE—SUFFICIENCY OF EVIDENCE.

In an action to recover a legatee's interest under a will, which gave the proceeds of the estate to certain persons and their children, and, if any of them died without children, gave their interest to the other legatees, evidence *held* not to show that the daughter of a certain legatee was dead or died without issue.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 5, 6; Dec. Dig. § 4.*]

Appeal from District Court, Fannin County; Ben H. Benton, Judge.

Action by W. H. Margraves and another against G. W. Wells and others, in which others intervened. From a judgment for plaintiffs and interveners, defendants appeal. Reformed and affirmed.

At a time not shown by the record, James M. Braden died, leaving a will, which was duly probated, containing a clause as follows: "I direct that all my real and personal property of whatsoever kind shall be sold and converted into money either in cash or upon a stipulated credit, as the interest of my estate may demand, and the money and the proceeds of the sale of such property shall be divided as follows: Giving one-half to my kin folks and one-half to my deceased wife S. R. Braden's kin folks. My kin folks are named as follows: Mary Kirkland, née Braden; Elizabeth Tindal, née Braden; Rich Braden, Obe Braden, John Braden; and if any of these parties be not living, to their children and their descendants; and if any of them should have no children their interest to be equally divided among the others who are living. That the other and remaining half I give and bequeath to my wife's kin folks, named as follows: Chaney Hughes and her children and their descendants, except the children and their descendants of John Hughes, Sr., named as follows: James Hughes, Mary Hughes and J. P. Hughes; the children and their descendants of Mary Scruggs, deceased; the children and their descendants of Nancy Crow, deceased; the children and their descendants of Betsey Gunter, deceased; and the children and their descendants of Henry Hobbs; and the children and their descendants of Nathan Hobbs, deceased; and the children and their descendants of John Hobbs, Sr., deceased; ex-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

cept John Hobbs, Jr., the son of said John Hobbs, Sr. Now if any of the above named persons are not living at the time of my decease, their interest and part shall be equally divided between those who are living." The will was an "independent" one; that is, it contained a provision that no action should be had in the probate court in relation to the settlement of the testator's estate other than the probating and recording of the will, and the returning of an inventory, appraisement, and list of the claims belonging to the estate. Appellant Wells, executor of the will, and the other appellants, sureties on his bond as such executor, were defendants in the court below. The plaintiffs were appellees W. H. Margraves and J. F. Hembree, who owned an interest in the estate by purchase from children and their descendants of Rich Braden, named in the will as one of the legatees, and appellee J. M. Tindal, son of Elizabeth Tindal, named in said will as one of the legatees. Appellant Wells having, as executor, as directed by the will, converted all the property of the estate into money, and having in his hands as such executor the sum of $21,083.54 to be distributed among the legatees, said appellees by their suit sought judgment against him and his said sureties for the parts of said sum they were respectively entitled to. Other persons, claiming as children or their descendants of others named as legatees in the will, among whom were Walter, Artie, Ethel, and Opal Bone, descendants of the testator's wife, intervened in the suit, adopted as their own the allegations in the plaintiffs' petition, and prayed judgment against appellants for the parts of the fund belonging to them respectively. Still other persons, shown by the pleadings and testimony to be entitled to share in the distribution of the fund, were never made parties to the suit. Because they were not, it was contended in the court below, and is here, that the court was without power to grant the relief sought by the plaintiffs and interveners. It will be noted that the testator directed that all the property belonging to his estate be converted into money, and bequeathed one-half the fund to be so created to his kinfolks, to wit, Mary Kirkland, Elizabeth Tindal, Rich Braden, Obe Braden, and John Braden, and their respective children or their descendants, and directed that, if either of the parties named should be dead and without a child or children surviving him or her, the interest he, or she, or they, would have taken under the will should be equally divided among the other parties named and their respective children or their descendants. It was contended, on behalf of the plaintiffs Margraves and Hembree, that both Obe Braden and Mary Kirkland died before the testator did, leaving no children or their descendants, and therefore that said plaintiffs, by their purchase of eight-tenths of the interest in the fund belonging to the children and their descendants of Rich Braden, owned and were entitled to demand and receive of the executor eight-tenths of one-third of one-half the fund, instead of the eight-tenths of one-fifth of one-half thereof, which they would have been entitled to had said Obe Braden and Mary Kirkland been living, or had they left children or their descendants surviving them. It was contended on behalf of the plaintiff J. M. Tindal, son of Elizabeth Tindal, and on behalf of interveners Myrtle Edwards, Clara Dillbeck, Hattie I. Tindal, Wm. E. Tindal, and R. E. Lee, children and their descendants of W. H. Tindal, deceased, another son of said Elizabeth Tindal, that, for the same reason, said Elizabeth Tindal became entitled to one-third, instead of one-fifth, of one-half of said fund; and it was further contended on behalf of said J. M. Tindal and said interveners that Fannie Key, another child of said W. H. Tindal, had died without issue, and therefore they were entitled to demand and receive of the executor the interest in said fund which otherwise should have been awarded to said Fannie Key or her descendants. The trial having been before the court without a jury, he found as facts: (1) That Obe Braden, named in the will as one of the legatees, died without issue before the testator died. (2) That Mary Braden, named as a legatee, who married one Kirkland, also died before the testator did, leaving three sons, each of whom died without issue before the testator died. (3) That Elizabeth Tindal, also named as a legatee, died, leaving a daughter named Fannie, who married one Key, a son named J. M. Tindal, who, as stated before, was one of the plaintiffs below, and three other children; that all of her said children, except said J. M. Tindal, were dead; and that said Fannie Key died without issue before the testator died. By assignments in the brief, the foregoing findings, in so far as they are that Obe Braden, Mary Kirkland, her children, and Fannie Key, were dead, and that said Obe Braden and Fannie Key died without leaving issue, are attacked as not supported by the testimony. (4) That Rich Braden and John Braden, named in the will as legatees, each died before the testator did, and each left children or their descendants surviving him. On findings made by him, the court rendered judgment in favor of the plaintiffs and interveners, appellees here, for portions of the fund he found to be due them respectively. Their motion for a new trial having been overruled, appellants prosecuted this appeal.

Gross & Leslie, of Bonham, and G. W. Wells, of Honey Grove, for appellants. Moore & Hardison and Moore & Park, all of Paris, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] Appellants were of the opinion the court could not grant appellees the relief they sought, unless he had before him

as parties to the suit all the persons entitled to share in a distribution of the fund in the hands of the executor, and complain of the action of the court, who was of a contrary opinion, in overruling their exceptions to appellees' petition on the ground that it appeared therefrom that there were other persons than those thereby made parties who were entitled to parts of the fund. As supporting their contention, appellants refer to article 2154, Sayles' Statutes, which requires an application for the partition and distribution of an estate to state "the names and residences of all persons entitled to a share of such estate, and whether such persons are adults or minors, and if these facts be unknown to the applicant, it shall be so stated· in the application," and to cases like Ship Channel Co. v. Bruly, 45 Tex. 6, which hold. that, in a suit for partition a petition showing other persons than those thereby made parties to be interested in the partition is so defective as to be subject to a general demurrer. But we think neither the statute nor the cases relied upon required the court to sustain the exceptions. The statute was intended to apply to estates being administered in the probate court, and not to estates being administered, as this one was, independent of that court. The reason for the rule which, in ordinary cases, requires all persons who own an interest in property to be made parties to a suit to partition it lies in the fact that the rights of all such parties will be affected by the partition. The reason does not apply here. All the property of the estate, in accordance with the direction in the will, had been converted into money, and, looking to the terms of the will, it was a mere matter of calculation to determine the part of the fund each legatee was entitled to. In awarding to one of the legatees judgment for the part he was entitled to, the rights of the other legatees could not be in any way affected. Therefore we think the court did not err when he overruled the exceptions. McNeill v. Masterson, 79 Tex. 670, 15 S. W. 673.

As before stated, the findings of the court that Obe Braden, Mary Kirkland, and Fannie Key died before the testator did, that said Obe Braden and Fannie Key died without issue, and that the three children of Mary Kirkland died without issue before the testator did, are attacked as without support in the testimony.

[2, 3] As to Obe Braden, it was shown that he left his home in Alabama when he was between 17 and 21 years of age, and went away with a circus traveling through the country. Between that time and the time the witnesses testified, a period of 58 years, he had never been seen nor heard of by any of his relatives. Clearly, on the showing made, the court was warranted in finding that Obe Braden died within, or at the expiration of, the 7 years following the date of his going away with the circus. Article

5707, Revised Statutes 1911; Primm v. Stewart, 7 Tex. 178; French v. McGinnis, 69 Tex. 19, 9 S. W. 323. While no witness testified directly to the fact, we think it was a fair inference from the testimony, that Obe Braden was unmarried at the time he left his home. If he was, then Shown v. McMackin, 9 Lea (Tenn.) 601, 42 Am. Rep. 680, is authority in point for saying that the court was authorized to indulge a presumption that he remained unmarried until he died. We think the ruling made in that case was justified by the principle which requires a presumption to be indulged, in the absence of testimony to the contrary, in favor of the continued existence of a status established as once existing. Summerhill v. Darrow, 94 Tex. 71, 57 S. W. 942; and see Nehring v. McMurrian, 94 Tex. 45, 57 S. W. 943. We conclude that the testimony was sufficient to support the findings as to Obe Braden.

[4-7] The witnesses A. L. Braden and J. W. Braden testified that Mary Kirkland was dead. Therefore we overrrule the contention made that the testimony was not sufficient to support .the finding of the court in this respect. But the testimony relied upon to show that her son, Jim Kirkland, was dead and that he died without issue was not so satisfactory. Excluding as inadmissible, because hearsay, as claimed by appellants, testimony of witnesses as to the result of inquiries about said Jim Kirkland made in Grimes county, where he once lived, and in McLennan county, where he was last heard of, by persons who did not testify, substantially all that was shown with reference to him was that in 1867 or 1868 he worked with the witness J. W. Braden in making a crop on a farm in Navarro county belonging to said J. W. Braden's mother, and went from there, presumably in 1868 or 1869, to Waco, in McLennan county, where he was shot and afterwards carried to a hospital. So far as the witnesses knew to the contrary, nothing further was thereafterwards heard of him. On the principle that a presumption that a person is dead may be indulged on a showing that, when last heard from, he was faced with some specific peril (Davie v. Briggs, 97 U. S. 628, 24 L. Ed. 1086), we are inclined to think the court was warranted in finding that Jim Kirkland died in McLennan county in 1868 or 1869 as a result of the wound he suffered there. But, as we understand the record, there was no testimony whatever on which to base a finding that he died without issue. It was not shown whether he had married and had children born to him or not at the time he helped make the crop in Navarro county, nor at the time he was shot in Waco. In the absence of testimony showing what his status in this respect was at the time or before the time the court was warranted in finding he died, we think it cannot be said the court was authorized to presume he died without issue. The burden was on appellees either to' prove that

he did not leave a child or children surviving him, or to show facts which the court was warranted in treating as a sufficient basis for a presumption that he did not.

[8, 9] The testimony relied upon to prove that Fannie Key was dead and that she died without issue, we think, was entirely insufficient to support the finding of the court. It was shown that she, with her husband, moved from McLennan county, Tex., to Crystal City, Mo., in 1883; that during the two or three years immediately following such removal she corresponded with her brother W. H. Tindal, then in Texas, and thereafterwards was never again heard of by her relatives. She had no children when witnesses last saw her, and they never afterwards heard of her having any. One of the witnesses had advertised, without result, for information regarding her in a paper published in St. Louis, Mo. This was all the testimony offered to show that she was dead and that she died without issue, except testimony showing that one Ferrell, who was not produced as a witness, had written letters to Crystal City inquiring about her, and found no one there who remembered that she had ever lived there. The testimony as to what Ferrell did, and the result thereof, was objected to as incompetent. It clearly was, we think; and we assume it was not considered by the court. The other testimony referred to, we think, wholly failed to prove, either that Fannie Key was dead, or that she died without issue.

It follows from what has been said that we are of the opinion that the judgment, in so far as it was based on findings that Jim Kirkland died without issue, and that Fannie Key was dead, and that she died without issue, is erroneous. Therefore it will be reversed in so far as it is in favor of appellees other than Walter Bone, Artie Bone, Ethel Bone, and Opal Bone, and the cause will be remanded for a new trial as between appellants and appellees, except the Bones, just mentioned. As stated above, the Bones claimed an interest in the fund as descendants of kin folks of the wife of the testator. Therefore the error pointed out in the judgment did not enter into or in any manner affect the recovery had by them, and, as to them, it will be affirmed. The costs incurred by them on this appeal will be taxed against appellants. The other costs of the appeal will be taxed against the other appellees.

## On Appellees' Motion for a Rehearing.

In the motion attention is called to the fact that the witness J. W. Braden, on his redirect examination, stated that "none of the three Kirkland boys were married." The fact that we overlooked this testimony led to the erroneous statement in the opinion that there was nothing in the record on which to base a finding that Jim Kirkland died without issue, and to the erroneous conclusion reached that the judgment was wrong, in so far as it was based on a finding to that effect. Giving effect to that finding, as we think we should, in view of the testimony overlooked as stated, it appears that the judgment rendered by the court below, so far as it was in favor of the appellees W. H. Margraves, J. F. Hembree, J. W. Braden, and Mrs. E. L. White, was not erroneous, and that, as to them, it should have been affirmed, as it was as to the appellees Walter Bone, Artie Bone, Ethel Bone, and Opal Bone.

In their motion appellees say they do not think it can be shown on another trial any more satisfactorily than it was on the trial had that Fannie Key died without issue, and they ask that, instead of reversing the judgment in so far as it was in favor of appellees J. M. Tindal, Mrs. Myrtle Edwards, Mrs. Clara Dillbeck, Hattie Inez Tindal, William Elmer Tindal, and R. E. Lee, it be so reformed as to adjudge in favor of those parties respectively the sum it appeared they were respectively entitled to recover if said Fannie Key was living, and as so reformed affirmed. We think this should be done.

Therefore the judgment heretofore rendered by us, in so far as it reverses the judgment of the court below in favor of said appellees W. H. Margraves, J. F. Hembree, J. W. Braden, Mrs. E. L. White, J. M. Tindal, Mrs. Myrtle Edwards, Mrs. Clara Dillbeck, Hattie Inez Tindal, William Elmer Tindal and R. E. Lee, will be set aside, and, in lieu thereof, judgment will be rendered affirming the judgment of the court below in so far as it was in favor of said W. H. Margraves, J. F. Hembree, J. W. Braden, Mrs. E. L. White, Walter Bone, Artie Bone, Ethel Bone, and Opal Bone, and so reforming it, so far as it is in favor of the other parties mentioned, as to adjudge a recovery in favor of J. M. Tindal of the sum of $280.91, instead of $456.61; in favor of Mrs. Myrtle Edwards and Mrs. Clara Dillbeck, each respectively, the sum of $56.20, instead of $91.34; and in favor of Hattie Inez Tindal, William Elmer Tindal and R. E. Lee, each respectively, the sum of $140.55, instead of $175.69. As so reformed, the judgment of the court below will be affirmed, but without prejudice to the right of Fannie Key, if living, or, if she is dead, to the right of her heirs or assigns, to maintain a suit against appellants for the part she or they may be entitled to of the fund in the hands of appellant G. W. Wells.

The costs incurred on this appeal by said appellees W. H. Margraves, J. F. Hembree, J. W. Braden, Mrs. E. L. White, Walter Bone, Artie Bone, Ethel Bone, and Opal Bone shall be paid by appellants. The other costs of the appeal shall be paid by J. M. Tindal, Mrs. Myrtle Edwards, Mrs. Clara Dillbeck, Hattie Inez Tindal, William Elmer Tindal, and R. E. Lee.